UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

BRET L. LUSSKIN. JR., an individual, on
behalf of himself and all others similarly situated,

    Plaintiff,

v.                                  **COMPLAINT - CLASS ACTION**

RICK'S CABARET INTERNATIONAL, INC.,
a Texas Corporation,

    Defendant.
_____/

**CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES
AND INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 *et seq.*,
THE TELEPHONE CONSUMER PROTECTION ACT
JURY DEMAND**

1.     "[T]he right to be let alone -- the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States*, 277 U.S. 438 (1928) (Justice Louis D. Brandeis *dissenting*). In congruence with this fundamental right to privacy, Plaintiff files this class action complaint alleging violations of 47 U.S.C § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA").

On or about November 25, 2009, Defendant surreptitiously obtained approximately one hundred consumers' cellular telephone numbers and began marketing to said consumers utilizing a particularly insidious form of advertising

known as "mobile spamming." Defendant has sent out thousands of unwanted text messages in violation of the TCPA. By effectuating these unauthorized text message calls (also known as "SMS Messages"), Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam.

In order to redress these injuries, Plaintiff, on behalf of himself and the proposed class of similarly situated individuals, brings this suit under the TCPA, which specifically prohibits unsolicited voice and text calls to cell phones. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all commercial text advertisements and an award of statutory damages to the class members, together with costs and reasonable attorney's fees.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction under 28 U.S.C. § 1332(d). Venue in this District is proper because Plaintiff resides here and Defendant conducts business in this District. The total amount in controversy exceeds $5 million dollars exclusive of interest and costs. None of the exceptions to 28 U.S.C. § 1332(d) are applicable in the instant action. This Court also has jurisdiction over Plaintiff's individual

claim pursuant to 28 U.S.C. § 1332(a) as there is diversity of citizenship and more than $75,000 dollars in controversy.

## PARTIES

3. Plaintiff, BRET L. LUSSKIN, JR. ("Plaintiff" or "MR. LUSSKIN"), is a natural person, and citizen of the State of Florida, residing in Miami-Dade County, Florida.

4. Defendant, RICK'S CABARET INTERNATIONAL, INC. ("Defendant" or "RICK'S"), is a Texas Corporation, which "owns and operates upscale adult nightclubs serving primarily businessmen and professionals in the United States." RICK'S operates from offices located at 10959 Cutten Road, Houston, Texas 77066.  RICK'S is registered corporation in the State of Texas, with its corporate headquarters also located in Texas, and is therefore a corporate citizen of Texas.  RICK'S operates an adult nightclub in Miami known as "Tootsie's Cabaret."

## TEXT MESSAGING

5. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

6. One of the newest types of such bulk marketing is to advertise through Short Message Services.  The term "Short Message Service" or "SMS" describes a

3

messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

7. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

8. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

9. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

10. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service

providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

12. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiffs provided express consent within the meaning of the statute. *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

13. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

14. Solicitations to wireless telephones are covered by certain delivery restrictions; specifically, "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the

name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges." *See* 47 C.F.R § 64.1200(e); 47 C.F.R. § 64.1200(d)(4); *see also, Rules and Regulations Implementing the Telephone Consumer Prot. Act of 1991,* Report and Order, 18 F.C.C.R. 14014 (2003).

15. One of the leading trade groups on mobile marketing, the Mobile Marketing Association, publishes guidelines for text message campaigns, which requires that every commercial SMS message include an unsubscribe mechanism. *See* Mobile Marketing Association Global Code of Conduct available at http://mmaglobal.com/policies ("Mobile Marketers must implement a simple termination (opt-out) process so that users can stop receiving messages, and users must be able to exercise their opt-out choice from any message.").

**FACTUAL ALLEGATIONS**

16. On or about the evening of November 25, 2009, MR. LUSSKIN patronized a nightclub known as "Tootsie's Cabaret" in Miami, Florida which is owned and operated by Defendant.

17.     MR. LUSSKIN paid a cover charge that evening in the amount of approximately $20 dollars to be seated in the upstairs section (i.e. "VIP" seating) of the nightclub; other patrons paid a lesser cover charge to be on the ground floor (i.e. general seating) at "Tootsie's Cabaret."

18.     During that evening several announcements were made by Defendant with respect to a Rolex "giveaway."

19.     Prior to these announcements, for several weeks, multiple advertisements were posted in said nightclub and on the internet, including Defendant's "Facebook" webpage; the advertisements promoted the aforesaid contest/giveaway.

20.     One such advertisement states: TOOTSIE'S CABARET PRESENTS ENTER A CHANCE TO WIN A ROLEX! A CHANCE TO WIN 3 GREAT PRIZES, 1ST PRIZE: ROLEX WATCH. 2ND PRIZE: $500 BARTAB & 3RD PRIZE $250 BARTAB, (NO CASH VALUE FOR BARTAB) WINNERS WILL BE ANNOUCED [*sic*] ON WEDNESDAY, NOVEMBER 25TH AT 11PM. MUST BE PRESENT TO WIN! ENTER YOUR CELL NUMBER.  *See* Plaintiff's Exhibit "A".

21.     In order to qualify for the Rolex "giveaway", Defendant required MR. LUSSKIN and other class members to provide their cellular telephone number to Defendant; no alternate form of entry was provided.

7

22.     MR. LUSSKIN and the patrons were required to provide their cellular telephone numbers to participate in the giveaway because, according to Defendant's numerous announcements at the club, "the winner will be randomly drawn and called tonight - you must be here to win."

23.     Plaintiff entered the contest along with approximately one hundred other people that evening in order to win a Rolex watch and/or other prizes.

24.     Defendant acquisition of Plaintiff's cellular telephone number was completely unnecessary since in order to claim the prize, one must be present at Tootsie's Cabaret; in other words, Defendant could have just as easily required the participants to enter their email address and simply notify the winner on November 25, 2009, whether they were present or not.

25.     With respect to the Rolex promotion, neither MR. LUSSKIN nor the other participants provided their express consent to receive commercial text messages from Defendant as required by the TCPA.

26.     MR. LUSSKIN and the other participants were unaware that providing their cell phone number would result in receipt of commercial text messages from Defendant.

27.     The entry form filled out by Plaintiff and the other participants made no references to marketing, text messages, or the TCPA, and did not contain a signature block – it did not provide express consent in any way whatsoever for

Plaintiff or the other participants to receive future commercial text messages from Defendant.

28.     The Rolex "giveaway" was a marketing ruse by Defendant in order to obtain MR. LUSSKIN'S and the other participants' cell phone numbers in order that Defendant or its agents could send commercial text messages to Plaintiff and the other participants over and over again.

29.     Since entering the contest, Plaintiff has received more than 200 unwanted commercial text messages by Defendant starting on or about December 5, 2009; this practice is commonly referred to as "mobile spamming." Some examples of the text messages sent by Defendant are as referenced below:

[On September 17, 2010…]

*Tootsie's Cabaret Miami – 125$ Bottle specials on Belvedere $ Hennessey all night and XXX Feature Entertainer Schevelle tonight!! Msg&Data rates may apply*

[On September 20, 2010…]

*Tootsie's Cabaret Miami – In the Biz 3$ drinks 100$ bottles. 5.95$ Prime Rib Dinner!! Monday Night Football!! All tonight @ Tootsies Msg&Data rates may apply*

[On September 23, 2010…]

*Tootsie's Cabaret Miami – 125$ Bottle Specials on GOOSE & REMY VSOP and Special performance by XXX Feature Lisa Ann of Nailin Paylin Msg&Data rates may apply*

> [On November 9, 2010…]
>
> *Tootsie's Cabaret Miami – In the biz 3$ drinks NO cover till 8pm 100$ bottles of GOOSE all night! HEAT game playing in KNOCKERS!! Msg&Data rates may apply*
>
> [On November 17, 2010…]
>
> *Tootsie's Cabaret Miami – Stop in for happy hour half price drinks and no cover until 8pm This weeks XXX feature entertainer Ginger Lee Msg&Data rates may apply*

30.  Identical text messages were sent to MR. LUSSKIN'S and the other participants by Defendant *en masse* using an automatic telephone dialing system, also known as an "auto-dialer"; the auto-dialer used by Defendant had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

31.  That all text messages at issue were sent from the short code "78747", which is owned, assigned, leased, or operated by Defendant and were telemarketing efforts sent by Defendant for the purpose of encouraging the purchase of property, goods, or services.

32.  Contrary to federal regulations governing commercial messages to mobile telephones, none of the messages sent to MR. LUSSKIN'S cellular telephone contained either a cost free telephone number to unsubscribe to

10

Defendant's text message campaign or an address of the entity sending the message.

33.    Defendant has conducted giveaways in its clubs for the purpose of mobile spamming.

## CLASS ACTION ALLEGATIONS

34.    This action is brought on behalf of a class consisting of (i) all persons in the United States; (ii) who entered a "giveaway", contest, or other similar marketing ruse; (iii) in one of Defendant's business establishments; (iv) provided their cellular telephone number; (v) and were subsequently sent commercial text messages from Defendant or Defendant's agent(s) (vi) from short code 78747; (vii) using an automatic telephone dialing system; (viii) without providing express consent to same; (ix) during the four year period prior to the filing of the complaint in this action through the date of certification.

35.    Plaintiff alleges on information and belief based upon the Defendant's use of mass text messages that the class is so numerous that joinder of all members of the class is impractical.  Approximately one hundred persons participated in the giveaway in which MR. LUSSKIN participated.

36.    There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class

members. The common factual and/or legal issues common to each class member are as follows:

      (a)    Whether Defendant's conduct is governed by the TCPA?

      (b)    Whether the mobile spam sent by Defendant violated the TCPA?

      (c)    Are the class members entitled to treble damages based upon the willfulness of Defendant's conduct?

      (d)    Whether Defendant should be enjoined from engaging in such conduct in the future?

37. Plaintiff's claim is typical of those of the class members. All claims are based on the same facts and legal theories.

38. Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

39. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

      (1)    The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.

(2) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

40. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate relief with respect to the class as a whole.

41. MR. LUSSKIN requests certification of a hybrid class under Rule 23(b)(3), Federal Rules of Civil Procedure, for monetary damages and pursuant to Rule 23(b)(2) for injunctive relief.

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

42. Plaintiff incorporates Paragraphs 1 through 41.

43. Defendant made unsolicited commercial text calls to potential customers (i.e. members of the class) using an automatic telephone dialing system.

44. The calls were made without the prior express consent of the parties.

45. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant, RICK'S CABARET INTERNATIONAL, INC., a Texas Corporation, for:

(a) An order certifying this case to proceed as a class action;

(b) Statutory damages at $500 dollars per call;

(c) Willful damages at $1500 dollars per call;

(d) An injunction requiring Defendant to cease all communications in violation of the TCPA;

(e) Reasonable attorney's fees and costs; and

(f) Such further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated this 7th day of June 2011.

Respectfully submitted,

SCOTT D. OWENS, ESQ.
*Attorney for Plaintiff Bret L. Lusskin, Jr.*
2000 E. Oakland Park Blvd., Suite 106
Ft. Lauderdale, FL 33306
Telephone: 954-306-8104
Facsimile: 954-337-0666
scott@scottdowens.com

By: /s/ Scott D. Owens
Scott D. Owens, Esq.
Florida Bar No. 0597651

DONALD A. YARBROUGH, ESQ.
*Attorney for Plaintiff Bret L. Lusskin, Jr.*
Post Office Box 11842
Ft. Lauderdale, FL 33339
Telephone: 954-537-2000
Facsimile: 954-566-2235
donyarbrough@mindspring.com


By: /s/ Donald A. Yarbrough
Donald A. Yarbrough, Esq.
Florida Bar No. 0158658